## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DOROTHY M. WONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-00526 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, Plaintiff Dorothy Wong filed a Motion for Summary Judgment [Doc. 3].  Defendant Michael J. Astrue, Commissioner of Social Security, also filed a Motion for Summary Judgment. [Doc. 4], to which Wong filed a response [Doc. 5].  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **denies** Wong's Motion and **grants** summary judgment for the Commissioner.

## I.     BACKGROUND

Wong is a 63-year old woman who suffers from Parkinson's disease and cervical radiculopathy.  Wong previously worked as a psychologist in private practice.  In 2005, Wong closed her practice due to her physical symptoms from Parkinson's disease and a pre-existing back problem that continued to worsen.  Wong alleges that, as of September 1, 2005, she was disabled.

### *Medical Evidence*

The medical evidence in the record supports Wong's contention that she suffers from both the symptoms of Parkinson's disease and cervical radiculopathy.

As early as 1992, Wong began to experience the symptoms of what would be diagnosed as Parkinson's disease—difficulty walking, reduced arm swing, slowed hand movements and hand tremors.  (Tr. 479).  An MRI performed at that time was "normal." (Tr. 468).   In 1993, medical evidence notes that her gait problems had reportedly progressed but that she was still active in tennis and aerobics.  (Tr. 478).   Wong was prescribed medication that seemed to control her symptoms.  However, in 1996, her symptoms again began to worsen.

The medical records reveal that, in 1996, Wong began a series of regular visits to Dr. Eugene C. Lai with Baylor College of Medicine's Department of Neurology.  (Tr. 441).  Wong complained of shortness of breath and difficulty writing.  (Id.).  Wong's balance and gait again were impaired and she was no longer able to play tennis but reported that she swam for exercise.  (Tr. 443, 444).   Her medication was therefore increased.  (Tr. 445).

In 1997, Wong reported working full time and that she was still suffering symptoms but was walking in "small spaces."  (Tr. 439).  However, in November 1997, Wong also began to complain of pain in her back and upper shoulder and arm.  (Tr. 433). Another MRI was performed.  Wong was diagnosed as having "cervical spondylosis with radiculopathy and early myelopathy."  (Tr. 333).  In 2000, she underwent additional examinations and was recommended for cervical decompression surgery.  (Tr. 324).

2

Wong underwent surgery in June 2000.  (Tr. 316).  Immediate improvement was noted, and she continued to improve "dramatically" as she healed.  (Tr. 314, 312).

In May 2001, Wong was in an automobile accident and experienced severe back pain as a result.  She was prescribed Vioxx and her condition improved to merely tightness in her lower back and occasional tingling in her hands.  The injury was diagnosed as "not serious" by her neurosurgeon, David Baskin, M.D., and he found no indication for surgical intervention.  (Tr. 310).

In December 2002, however, Wong again complained of persistent pain in her lower back and legs.  Wong stated to Dr. Jeffery Kozak that she had experienced this pain for "many years."  (Tr. 306).  Her pain improved with physical therapy but it was noted that she was possibly a candidate for further surgery on her lower back.  (Tr. 302, 301).  She was again told in February 2005 that surgical intervention might be recommended if her lower back symptoms continued to worsen.  (Tr. 301).

In May 2005, Wong reported to Dr. Lai that she continued to suffer problems with her balance and was frequently short of breath.  (Tr. 377).  She stated that her energy was "OK" but she was "easily tired."  (Id.).  He recommended that she "keep active [and] exercise regularly."  (Id.).  In June 2005, she again reported that she was "physically well . . . neck [and] back pain tolerable."  (Tr. 375).  Although she suffered from symptoms of Parkinson's, such as tremors and balance problems, she reported being independent in her activities of daily living.  (Id.).  Dr. Lai advised her to take an afternoon nap, add an additional medication and to "keep active [and] exercise regularly."  (Tr. 375).  He noted at that visit that her speech was "fluent."  (Tr. 376).

3

Sometime between this June 2005 visit with Dr. Lai and February 2006, Wong injured her right shoulder.  She was diagnosed with "an acute rupture of the long head of the biceps tendon" and surgery was recommended by Dr. Omer A. Ilahi of the Texas Arthroscopy and Sports Medicine Institute.  (Tr. 300).  Dr. Ilahi cautioned that not all patients needed surgery for the injury, and that she could return to her normal activities "as tolerated" even without surgery.  (Id.).

In March 2006, Wong again returned to Dr. Lai.  (Tr. 373).  She complained that she was losing her balance and experiencing some "off" periods in the afternoon.  (Id.).  However, as before, she remained independent in her activities of daily living and stated that her appetite was good and she was sleeping well. (Id.).  In June 2006, Wong was examined by Dr. James C. Lai of Texas Pain Consultant Associates for "evaluation and treatment of regarding her chronic low back and leg pain."  (Tr. 203).  Dr. James Lai's report stated that Wong's low back and leg pain started approximately 2001 and resolved on its own for some time without surgical intervention, but that the low back and leg pain reoccurred a few months prior to the exam.  (Id.).  Wong described her pain as being a "10 out of 10."  (Id.).  An MRI was performed and Dr. James Lai noted it revealed "degenerative disc disease with stenosis, which has worsened since her last MRI in 2004."  (Tr. 200).  Lai recommended a diagnostic lumbar epidural steroid injection for Wong. (Tr. 202).  However, because Wong was scheduled to take a trip, she was not able to receive the injection for three weeks.  In the meantime, Lai prescribed medication. (Id.).  While taking this medication, even without the steroid injection, Wong's symptoms "completely resolved."  (Tr. 197).  She underwent steroid injection nonetheless, and Dr.

Lai reported that she had not had any recurrence of her symptoms, and she was "very pleased with the outcome of this intervention this far.  No other complaints."  (Id.).  Dr. Lai recommended discontinuing the steroid injection and instead prescribed myofascial release therapy and home stretching exercises.  (Id.).

Wong reported improvement in her August 2006 visit to Dr. Eugene Lai.  She stated that, although she still had "off" periods and balance problems due to her Parkinson's disease, her energy was "ok" and her appetite was "good."  She also reported that her neck and back were "ok" after the steroid injections.  (Tr. 371).  However, in January 2007, Wong reported to Dr. James Lai that she had injured her right shoulder and was in significant pain.  (Tr. 194).

After January 2007, Wong began to report more symptoms of her Parkinson's disease and additional problems.  In March 2007, she reported to Dr. Eugene Lai that she was experiencing numbness in her left hand and palms but that she was still independent in her activities of daily living, reporting that she drove "a little."  Dr. Lai noted her speech as "fluent" and stated that she was alert and oriented.  (Tr. 369, 370).  In September 2007, she again reported to Dr. Eugene Lai that she was "physically well" but that her stress was increasing.  (Tr. 367).  Again, she stated at this visit that she was still independent in her activities of daily living and that she could drive a car.  (Id.).  She reported decreased memory, but Dr. Lai noted she was alert, oriented and fluent in her speech.  (Tr. 368).  At this visit, she indicated that she was considering deep brain stimulation, presumably as a treatment for her Parkinson's disease.  (Tr. 367).  In October 2007, Wong was seen by Dr. Theresa Vicroy.  Dr. Vicroy noted that Wong

appeared to have "significant involuntary movement," but that Wong's "cranial nerves, motor and sensory function, reflexes, gait and coordination are all intact."  (Tr. 245). Similarly, in November 2007, Dr. Eugene Lai's notes report that Wong was still "physically well" even though she complained of lower back pain and hip pain.  Wong stated at that visit that she was independent in her activities of daily living and that she was still driving a car with "some caution."  (Tr. 365).  Wong also stated that she was "sometimes overdoing her limits physically."  Dr. Lai noted that her speech was fluent and that she was alert and oriented.  (Tr. 366).

On February 4, 2008, Wong again saw Dr. Baskin, this time regarding numbness in her hands.  Dr. Baskin's report noted that Wong was suffering from symptoms of Parkinson's disease, and that Dr. Eugene Lao had recommended deep brain stimulation but that Wong was "resistant" to undergoing the procedure.  (Tr. 298).  Dr. Baskin examined Wong and ordered an MRI, which revealed "a grade 1 degenerative spondylolisthesis at L4-5, with moderately severe spondylitic canal stenosis, and a chronic left L5-S1 protrusion."  (Tr. 298).  Dr. Baskin stated that he did not believe Wong required surgical intervention, but that she was possibly suffering from carpal tunnel syndrome.  Dr. Baskin urged Wong to consider surgery for the carpal tunnel issue, as "she loves to play the piano, and she is becoming very symptomatic."  (Tr. 299).  He also urged Wong to consider deep brain stimulation because it "could make a tremendous difference in her life."  (Id.).

In March 2008, Wong again saw Dr. Eugene Lai and reported numbness of both arms and hands, leg pain and weakness, gait imbalance, and occasional falling.  She

informed Dr. Lai that she would not be willing at that time to consider deep brain stimulation. (Tr. 363). Dr. Lai's notes from that visit state that Wong was again alert, oriented and fluent in her speech. (Tr. 364). In April 2008, Wong again saw Dr. Viceroy and stated that, although she was suffering from low back, hip and bilateral back pain, that "[she] does not want surgery or medication." (Tr. 247).

### Application for Benefits

On January 8, 2008, Wong applied for social security disability insurance benefits ("SSDI") and supplemental security income benefits ("SSI"), stating that she was disabled as of September 1, 2005. (Tr. 86, 89). Wong stated that her primary problem was her Parkinson's disease, which caused balance and gait problems, made her sometimes unable to control her movements, and had recently begun to cause her difficulty with speech. (Tr. 111, 112, 159). Wong also stated that she had "degeneration of the spine," and was in constant pain. (Tr. 111, 159). Wong's application noted, however, that her symptoms were unpredictable and that she was able to "do Tai Chi, yoga and try to work out at the gym. These are all recommended by my physicians." (Tr. 112). Finally, Wong stated that she had high blood pressure. (Tr. 159). Despite these symptoms, however, Wong also stated that she volunteered on boards of organizations assisting children and dealing with mental health because such work allowed her to work when she was having an "on" period of relatively light symptoms. (Tr. 112). Wong also stated that she was able to drive a car during an "on" period. (Id.)

Wong's application for benefits was denied initially on February 20, 2008 and again upon reconsideration on March 21, 2008. Wong requested a hearing before an Administrative Law Judge ("ALJ").

### Hearing

The hearing occurred before ALJ Gerald Meyer on August 28, 2009. Wong appeared and was represented by counsel, but she did not testify. At the hearing, the ALJ heard testimony from an impartial medical expert ("ME") and a vocational expert ("VE"). The ME testified regarding Wong's medical records and described her condition up to her date of last insured, December 31, 2005. The ME testified that Wong's medical records revealed that she suffered from Parkinson's disease, but that she was independent in her activities of daily living in 2005 and was walking without assistive devices, and thus would not qualify for a listing-level disability. (Tr. 26). He also reviewed her MRI results from June 2006 and noted that it was very likely that the problems noted with her spine at that time existed at the time of her date last insured, December 31, 2005. However, even with those back problems, the ME testified that Wong still would not have had a listing-level disability. (Tr. 28).

The VE testified that Wong's past work was as a psychologist, which was sedentary, skilled work. (Tr. 35). The ALJ asked the VE to assume a hypothetical person with Wong's age and education, who could (1) stand and walk about two to three hours in an eight-hour day with normal breaks, or sit for six; (2) lift or carry about 10 pounds occasionally; (3) occasionally climb stairs, stoop, crouch; and (4) never climb ropes, ladders or scaffolds, balance, kneel, crawl, go to unprotected heights and never use

dangerous machinery.  (Tr. 35).  The ALJ also limited the hypothetical person's ability to perform fingering tasks to "frequent but not continual."  (Id.).  The VE testified that a person with such limitations would be able to perform Wong's past work.  Wong's attorney questioned the VE about whether a person who was limited to only occasional fingering and occasional grasping would still be able to perform Wong's past work.  The VE testified, and later submitted a report affirming her testimony, that the position of psychologist required occasional to no handling, fingering and feeling.  The VE described a psychologist as "a very high level job" and noted that, although written notes were often a part of the job, "but there's other ways to get that information to written communications, such as a doctor."  (Tr. 37).  The VE also noted that independent psychologists could use secretaries or assistants. (Tr. 38).  The VE also stated that taking a half-hour nap, Dr. Lai had prescribed for Wong, would not be inconsistent with her ability to maintain employment.  (Tr. 38).

After the hearing, at the request of Wong's attorney, the ALJ received into evidence a letter from Dr. Eugene Lai, describing his opinion of Wong's condition in 2005.  The letter stated as follows:

> Ms. Dorothy Wong is a patient whom I have been treating since September 1996.  She has been diagnosed with Parkinson's disease.  Her symptoms of bradykinesia, tremor, rigidity, postural instability and dopa-induced dyskinesia worsened with time despite treatment.  She also suffered from cervical radiculopathy with persistent neck and back pain.  Ms. Wong's neurological condition further deteriorated in 2005, with progressive decline of the above symptoms leading to motor incoordination, gait imbalance and falling.  It is my medical opinion that she became disabled towards the end of 2005.

(Tr. 488).

### *The ALJ's Decision*

After the hearing, the ALJ issued a decision stating that Wong was not disabled. The ALJ first agreed with Wong that she had sufficient quarters of coverage to remain insured through December 31, 2005.  (Tr. 13).  The ALJ then reviewed the medical evidence and the testimony from the hearing and found that, although Wong suffered from the "severe" impairments of Parkinson's disease and cervical radiculopathy, she did not meet a listing description of disability and that, as of the date last insured, Wong had the residual functional capacity ("RFC") to perform sedentary work with additional limitations.  (Tr. 15, 16).  Specifically, the ALJ described the limitations of Wong's RFC as follows: "she can stand/walk for 2-3 hours in an 8 hour day; sit for 6 hours in an 8 hour day; can lift/carry 10 pounds occasionally; can occasionally climb stairs but never ropes, ladders or scaffolds; can occasionally stoop or crouch but never balance, kneel, or crawl; can never work at unprotected heights or around dangerous machinery; and fingering with either hand is limited to frequent never continuous use."  (Tr. 16).  In making this determination, the ALJ found that Wong's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, however the ALJ found that Wong's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his determination of her RFC.  (Tr. 16).  The ALJ noted that "given the complaints of disabling symptoms and limitations, the claimant has described daily activities which are not limited to the extent one would expect.  Notedly, the claimant consistently reported that she can perform her basic daily living activities independently, she is physically well and she needs no

assistive device to ambulate effectively." (Tr. 17). The ALJ also noted that Wong "continued to vacation well after the alleged onset date of disability." (Tr. 17). In addressing the opinion submitted by Dr. Eugene Lai, the ALJ noted that "Dr. [Lai's] opinion is inconsistent with the medical findings discussed above in this decision." (Tr. 17). The ALJ further held that Wong was capable of performing past relevant work as a psychologist, even given her RFC limitations.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

III.    STANDARD OF REVIEW

Judicial review of the Commissioner's final decision under 42 U.S.C. § 405 (g) is limited to whether the decision is supported by substantial evidence in the record and whether the proper legal standard was used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must affirm the Commissioner's final decision where substantial evidence supports the Commissioner's decision and the Commissioner followed the relevant legal standards. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Reversal is appropriate only where no credible evidentiary choices support the Commissioner's decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Indeed, "[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Carey*, 230 F.3d at 135, *citing Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The claimant bears the burden of proving his disability by establishing a physical or mental impairment lasting at least 12 months and preventing him from engaging in any substantial gainful activity. 42 U.S.C. §1382c (2004). In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 416.920(a)(4) (2010). A finding that a claimant is disabled at any

point in the five-step process is conclusive and terminates the Commissioner's analysis. *Bowling*, 36 F.3d at 435. Although the burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## IV. ANALYSIS

Wong raises four points of error that she contends entitled her to have summary judgment granted in her favor. First, Wong contends that the ALJ erred by failing to give controlling weight to the opinion of her treating physician and failing to complete the required analysis before rejecting her treating physician's opinions. Wong also contends that the ALJ erred by improperly discounting her credibility and by finding her capable of sedentary work. Next, Wong contends that ALJ erred in considering her limited manual dexterity, that the ALJ posed a defective hypothetical to the VE that failed to properly account for that limited dexterity, and that the ALJ should have found Wong disabled due to this limitation. Finally, Wong contends that the ALJ erred in finding that her chronic pain, carpal tunnel and high blood pressure were not "severe."

### A. Statutory Basis for Benefits

Wong applied for both Social Security disability insurance and Supplemental Security Income (SSI) benefits. Social Security disability insurance benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured *and* disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability). In

contrast, SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.  20 C.F.R. § 416.110.  Eligibility for SSI is based on proof of disability and indigence.  *See* 42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements).  Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act.  *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI).  The law and regulations governing the determination of disability are the same for both programs. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

### B.  Determination of Disability

Under the Social Security Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  *Id*. § 423(d)(2)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality demonstrable by acceptable clinical and laboratory diagnostic techniques. *Id*.; 42 U.S.C. § 1382c(a)(3)(B).

A disability claim is examined in a five-step sequential analysis to determine whether "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).  If, at any step, the claimant is determined to be disabled or not disabled, the determination is conclusive and the inquiry ends.  *Id.*

The burden of establishing disability rests with the claimant for the first four steps, and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform.  *Id.*  The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005); 20 C.F.R. §§ 404.1545, 416.945.  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*  Once the Commissioner shows that a claimant is able to perform a significant number of jobs in the national economy, the burden shifts back to the plaintiff to rebut this finding.  *Id.*

### C. Failure to Give Controlling Weight to Opinion of Wong's Treating Physician

Wong first complains that the ALJ did not give controlling weight to the opinion of Dr. Lai, her treating physician, and that the ALJ failed to complete the required

analysis before rejecting Dr. Lai's opinions.  Finally, Wong complains that the ALJ was required to seek additional medical evidence before rejecting Dr. Lai's opinion that she was disabled.

Under the Social Security regulations, a treating physician's opinion on the nature and severity of a claimant's impairment receives "controlling weight" only where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Perez v. Barnhart*, 415 F.3d 457, 465–66 (5th Cir. 2005); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993).  On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).  Similarly, an ALJ is free to reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citations omitted).

The Fifth Circuit held in *Newton* that an ALJ is required to perform a "detailed analysis" of each of the six factors listed in section 404.1527(d) before declining to give any weight to the opinions of the claimant's treating specialist.  209 F.3d at 453, 456. The criteria for assessing a treating physician's opinion as required by 20 C.F.R. § 404.1527(d)(2) are: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment

relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

However, pursuant to Soc. Sec. Ruling 96–2p (July 2, 1996) ("SSR 96–2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" 20 C.F.R. § 404.1527(e)(1). "These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Id.* The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also Rollins v. Astrue*, No. 11-30691, 2012 WL 874571 at *4 (5th Cir. March 15, 2012) ("[W]here there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in § 404.1527(d)(2) is unnecessary.").

Similarly, good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). SSR 96–2p provides that a medical source statement from a treating source which is well-supported by medically acceptable

17

evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96–2p. This ruling further explains:

> It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.*

Here, the ALJ's opinion refers to medical evidence submitted from Dr. Eugene Lai, as well as Dr. James Lai, Dr. David Baskin, Dr. Vicroy, and Methodist Hospital. (Tr. 17). As outlined above, the medical evidence submitted by Wong shows that, although she did indeed suffer from Parkinson's disease and related symptoms, and suffer pain from cervical radiculopathy, around the time of her date last insured, she was consistently reporting being independent in her activities of daily living, walking without assistance, and driving a car. Thus, while the ALJ did reject Dr. Lai's conclusory opinion—submitted after the hearing in 2009—that Wong was "disabled" as of 2005, the ALJ actually relied on Dr. Lai's notes and opinions from the relevant time period to support his conclusion that Wong was not disabled as of December 31, 2005. Further, where other opinions and medical evidence supported the conclusion that Wong was not disabled, the ALJ was not required to seek additional medical examinations or opinions. In this case, other medical evidence noted that her lower back and leg pain resolved with steroid injections and medication, and that in October 2007, although she appeared to have "significant involuntary movement," her "cranial nerves, motor and sensory function, reflexes, gait and coordination are all intact." (Tr. 197, Tr. 245). In light of the

medical record as a whole, the ALJ did not err by not giving controlling weight to Dr. Lai's opinion that Wong was disabled, nor did the ALJ err by failing to perform the analysis of section 404.1527(d).

### D. ALJ Improperly Relied on Wong's Activities of Daily Living

Next, Wong contends that the ALJ improperly discounted her credibility and found that she could perform sedentary work with restrictions. Wong essentially contends that the ALJ improperly focused on evidence stating that, despite her alleged symptoms, she was able to take a vacation and remain independent in her activities of daily living. Wong cites to *Mims v. Califano*, 581 F.2d 1211 (5th Cir. 1978), and argues "it is improper for the ALJ to conclude from the ability to perform light household chores, or in this case, the fact that Plaintiff still manages to take a vacation, that Plaintiff also retains an ability to function consistently at a sedentary exertional level eight hours a day for sustained periods." In *Mims*, the plaintiff was found to be disabled despite retaining the capacity for light housework, including cooking supper, making a bed, mowing the lawn, and infrequently driving. *Mims*, 581 F.2d at 1215.

Here, however, there was more than just evidence of "light housework"—Wong alleged a disability completely preventing her from employment, but then also stated that she worked out at the gym, practiced yoga and Tai Chi, and volunteered her time and skills. In addition, the medical evidence shows that—both before and after her alleged onset date—Wong stated that she was feeling "well," her appetite was good, and she was driving a car and independent in her activities of daily living. Such inconsistencies between claims of limitations and a claimant's daily activities can be "quite relevant in

19

evaluating [a claimant's] credibility." *See Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988)).   Further, this evidence was part of the body of substantial evidence supporting the ALJ's determination that Wong was not disabled.

### E.  Wong's Manual Dexterity

Wong next contends that the ALJ made an error when considering her manual dexterity.  Wong points to evidence that she suffers from carpal tunnel syndrome and that symptoms of Parkinson's disease limit her manual dexterity.  The ME also testified at the hearing that, even though her symptoms were not severe enough to qualify her for a listing-level disability, Wong's fine motor skills and typing abilities were nonetheless impaired by Parkinson's disease, stating, "You cannot expect her to be working six hours and do typing as to do primarily for six hours out of eight hours day."  (Tr. 34).

The ALJ's hypothetical to the VE assumed someone who was limited to performing "frequent but not continual" fingering tasks.  (Tr. 35).  Fine manipulation, or "fingering," involves "picking, pinching, or otherwise working primarily with the fingers."  SSR 85-15.  The VE testified that, even with such a limitation, a person such as the one the ALJ described could perform Wong's past work as a psychologist, describing that as "sedentary, skilled" work.  (Tr. 35).  Wong's attorney cross-examined the VE, questioning whether someone limited to only occasional fingering and grasping could indeed perform Wong's past work.  (Id.).  The VE explained that Wong's past work as a psychologist did not require "a lot of typing, answering phones."  (Tr. 35).  Instead, the VE testified that "it's mostly just counseling." (Tr. 36).  To further support her testimony,

the VE submitted a handwritten summary after the hearing affirming that the job of Counseling Psychologist, as described in the DOT, "requires no handling, fingering and feeling." (Tr. 84). The VE stated that Wong had performed this job in the past. Similarly, the VE's statement affirmed that the position of Clinical Psychologist requires "occasional handling, fingering and feeling" and that the VE "believe[d] that occasional handling, fingering and feeling is more in line and consistent with her position." (Id.). (emphasis in original).

Wong argues that the ALJ erred by finding that she could do her past work. However, the evidence submitted by the VE—which she testified was in accord with the Dictionary of Occupational Titles—was that Wong had performed past work as a Clinical Psychologist, and that the job required occasional handling, fingering and feeling. (Tr. 84). Similarly, the ME specifically testified at the hearing, in response to questions from Wong's counsel, that Wong could still perform such "occasional" work in an office environment, despite her dyskinesia caused by Parkinson's. (Tr. 34). Substantial evidence thus supports the ALJ's finding that Wong could perform her past work as a Clinical Psychologist.

Further, Wong complains that the ALJ failed to take any limitations of bilateral dexterity into account. None of the evidence presented directly addressed any limitations of "bilateral dexterity," other than the limitations on fingering and fine motor skills discussed above. To the extent Wong wished to argue that she was additionally limited in her bilateral dexterity, and that her previous work required such dexterity, her counsel had an opportunity at the hearing to cross-examine both the ME and the VE on this point,

but did not do so.  *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Finally, Wong contends that the ALJ erred because the testimony of the VE "calls into serious question whether Mrs. Wong could actually do her past relevant work as a clinical psychologist," and the ALJ should have thus applied Grid Rule 201.06 and found Wong disabled.  The Grid Rules would come into play, however, only if the ALJ had found that Wong was not able to perform her past relevant work.  *See, e.g.,* 20 C.F.R. Part 404, Subpart P, App. 2.  The "Medical-Vocational Guidelines," commonly referred to as the "Grid," reflect the analysis of the various vocational factors (age, education, and work experience) in combination with an individual's RFC in evaluating the individual's ability to engage in substantial gainful activity other than his or her vocationally relevant past work.  *Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir. 1987) ("[T]he Grid is applied only if the claimant is unable to perform "his or her vocationally relevant past work."")  (citing 20 C.F.R. 404, Subpart P, Appendix 2, § 200.00(a)).  Here, substantial evidence supports the ALJ's decision that Wong was capable of performing her past relevant work and the ALJ did not err by not applying the Grid rules in analyzing Wong's case.

### F. ALJ erred by failing to include a finding that Wong's chronic pain, carpal tunnel and high blood pressure were "severe."

Wong's last argument is that the ALJ erred by not finding her chronic pain, carpal tunnel syndrome and high blood pressure to be "severe."  An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities.  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

With regard to her carpal tunnel syndrome, Wong did not allege this as an impairment in her disability application or supporting materials.  The allegation that she suffers from carpal tunnel syndrome presumably comes from the 2008 examination with Dr. Baskin regarding numbness in her hands.  (Tr. 298).  In this examination—two and a half years after her alleged onset of disability—Dr. Baskin urged Wong to consider surgery for this problem.  (Tr. 299).  However, there is no evidence in the record that Wong either underwent carpal tunnel surgery or that she failed to do so and continued to suffer symptoms.  *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) (impairments that reasonably can be remedied or controlled by medication or treatment are not disabling).  Further, there is no evidence in the record that Wong's carpal tunnel syndrome "significantly limits [her] physical or mental abilities to do basic work activities"—the only evidence related to her carpal tunnel syndrome diagnosis is Dr. Baskin's note in 2008 that "she loves to play the piano" and the symptoms presumably interfered with that activity.  (Tr. 299).  Again, this examination and exchange took place

in 2008, and there is no evidence from the time of her alleged onset of disability—December 31, 2005—supporting a finding that she suffered from a severe disability relating to her carpal tunnel syndrome.

Similarly, there is no evidence in the record to support a finding that Wong's alleged high blood pressure was "severe."  Although Wong alleged high blood pressure as a disabling condition, there is no medical evidence showing that it caused her any troubling physical symptoms or that it "significantly limits [her] physical or mental abilities to do basic work activities."  752 F.2d at 1101.

Finally, Wong alleges the ALJ erred by not finding the chronic pain she suffers to be "severe" under *Stone*.  The ALJ's opinion acknowledges Wong's complaints of pain and other symptoms, but then states that "the intensity and persistence of pain are not consistent with medical record signs and laboratory findings or the medical record as a whole during the relevant period."  (Tr. 17).

The Fifth Circuit has held that pain alone can be disabling under the Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *See Selders v. Sullivan,* 914 F.2d 614, 618-19 (5th Cir. 1990) (citations omitted).  Further, the Fifth Circuit has previously noted that "[w]hile an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility.  He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated."  *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

Here, while the ALJ acknowledged Wong's diagnosis of Parkinson's disease and cervical radiculopathy, the medical evidence showed that Wong reported feeling "physically well . . . neck [and] back pain tolerable" in June 2005, and that she was repeatedly encouraged by her doctors to remain active and exercise.  (Tr. 375).  Wong's application for disability benefits acknowledged that she practiced yoga and Tai Chi, and her reports to her doctors consistently demonstrated that she was independent in her activities of daily living, drove a car when her Parkinson's symptoms allowed, and remained generally active.  Wong also reported travelling on vacation and volunteering her time after she no longer maintained a full-time practice.  This evidence—in combination with the lack of evidence showing how the pain "significantly limits [Wong's] physical or mental abilities to do basic work activities"—supports the ALJ's failure to include the pain alleged by Wong among the list of conditions he found to be "severe" under *Stone v. Heckler.*

## CONCLUSION

A review of the record reveals that the ALJ applied the appropriate legal standards in making this determination.    Additionally, substantial evidence supports the determination that Wong was not disabled during the relevant time period.   A review of the pleadings, the discovery and disclosure materials on file, and any affidavits shows that there is no genuine issue as to any material fact in this case, and summary judgment is therefore appropriate.   FED. R. CIV. P. 56(c).   Accordingly, Wong's Motion for Summary Judgment is **denied** and the Commissioner's Motion for Summary Judgment is **granted**.

Signed at Houston, Texas on April 13, 2012.

George C. Hanks, Jr.
United States Magistrate Judge